MARK D. HAMBURG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamburg v. Commissioner
Docket No. 29196-86
United States Tax Court
T.C. Memo 1989-669; 1989 Tax Ct. Memo LEXIS 669; 58 T.C.M. (CCH) 1015; T.C.M. (RIA) 89669; December 26, 1989
Robert F. Alsfelder, Jr., for the petitioner. Joseph P. Grant, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated April 14, 1986, respondent determined a deficiency of $ 7,715 in petitioner's Federal income tax for taxable year 1982. The *670 issues for decision are: (1) whether petitioner's claimed away from home deductions should be allowed under section 162(a)(2); [1] and (2) what portion of petitioner's expenses related to his Midland, Michigan, house is petitioner entitled to deduct under either section 162 or section 212. FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner resided in Cincinnati, Ohio, when he filed his petition. Petitioner grew up in Rochester, Michigan, and also attended college there. Petitioner's parents still live in Rochester, as do several of his friends. Petitioner, a mechanical designer by trade, graduated from Oakland Community College (Oakland College) in 1977 with an associate's degree (2 years). Before entering Oakland College, petitioner attended the Lawrence Institute of Technology, where he studied construction engineering. *671 Petitioner lived with his parents in Rochester during the time he attended college. After graduating from Oakland College, petitioner worked as a carpenter in the Rochester area. He continued to live with his parents until the middle of 1978, when he rented a room in Lake Orion, Michigan. After his carpentry work slowed down, petitioner tested concrete and soil for Michigan Testing. In August 1979, petitioner accepted employment with the Bechtel Power Company (Bechtel) in Ann Arbor, Michigan, as a drafter in the plant design department. Immediately afterwards, petitioner was temporarily assigned to work in Morris, Illinois. Although this assignment was only supposed to last for 3 to 4 months, petitioner worked in Morris through the spring of 1980, when he transferred to Midland, Michigan. After his transfer, petitioner rented a room in Mt. Pleasant, Michigan, and commuted approximately 30 miles to the Bechtel nuclear plant that was under construction. In October 1980, petitioner moved into a 4-bedroom house that he rented in Midland. He sublet one of the bedrooms to Gary Kiley (Kiley), a friend of his. In February 1981, petitioner purchased the house that he had been renting. *672 Kiley moved out at about that time and two more of petitioner's friends, Jim Zimmer and Jeff Blanchard, moved in. Petitioner charged each of his tenants rent of $ 125 per month. Petitioner and his tenants split the utility bills three ways, with the exception of water and heating oil, which petitioner paid for entirely. Petitioner also paid for repairs on the house as well as insurance and real estate taxes. In June 1981, petitioner terminated his employment at Bechtel. Petitioner left after he was told at his performance review that he would not be able to advance much further on the pay scale because of his level of education. One of petitioner's friends at Bechtel had gone through a similar situation and suggested that petitioner return to Bechtel on a contract basis, where he could be paid at a higher rate. At the time he left, petitioner understood that Bechtel had an unwritten policy that once an employee left, he could not return as a contract employee for 6 months. After he left Bechtel, petitioner went to work in June 1981, as a piping designer for Matrix Technical Services (Matrix), which is headquartered in Braintree, Massachusetts. Matrix then sent petitioner *673 on temporary assignment to Rockville, Maryland. The Rockville assignment ended in August 1981. On August 31, 1981, petitioner accepted employment with Piping Design Services (PDS) in Big Springs, Texas, where he was involved in designing drilling rigs. Petitioner had to wait 2 weeks before he began work in Texas and during that period he went back to Midland, Michigan. While he was in Midland, petitioner contacted his old supervisor at Bechtel as well as several other contract engineers to see whether there were any openings at Bechtel. His former supervisor told petitioner that he could come back as an employee at approximately the same salary as he was earning when he left. Although petitioner understood that the PDS job was to last from 3 to 6 months, the job only lasted approximately a month. While petitioner was in Texas, TAD Technical Services (TAD) contacted him about a position in Ohio. TAD hired petitioner on October 1, 1981. TAD assigned him to design piping at the Zimmer nuclear power station (Zimmer Plant) in Moscow, Ohio. Petitioner understood that this assignment was to last from 3 to 6 months. At the time petitioner was assigned to the Zimmer Plant, it was *674 scheduled to be completed by the middle of 1983. In July 1982, it was announced that the construction was 122 days behind schedule, but there was hope that the project would get back on schedule. In October 1982, it was announced that the project was 6 months behind schedule. In November 1983, petitioner's employment with TAD was terminated due to a conflict of interest that had developed between Cincinnati Gas and Electric Company (CG&E) and the Kaiser Corporation, which had contracted with CG&E to construct the Zimmer Plant. Petitioner was retained at the Zimmer Plant by another employer until February 1984. After petitioner left the Zimmer Plant, he remained in the Cincinnati area where he is employed today. When he moved to the Cincinnati area, petitioner first stayed in the Marina Hotel in New Richmond from October 5, 1981, to October 17, 1981. New Richmond is approximately 10 miles from the Zimmer Plant. From October 18, 1981, to November 30, 1981, petitioner rented a room in a house in New Richmond. From December 1, 1981, to April 30, 1982, petitioner rented an apartment in New Richmond. Petitioner entered into a 6-month lease for the apartment. Petitioner also leased *675 furniture based on a minimum lease period of 6 months. The furniture lease contained penalties for early termination as well as provisions for buying the furniture. In addition, petitioner paid over $ 600 for the installation of a new carpet in the apartment. In April 1982, petitioner entered into a 1-year lease for an apartment in Mt. Adams, which is approximately 1 mile from downtown Cincinnati and 29 miles from the Zimmer Plant. The lease contained a termination clause that provided that petitioner could have cancelled the lease if he had been transferred, although he still would have been responsible for a minimum of 6 months' rent in any event. Petitioner lived in this apartment from May 1, 1982, to November 1983. In early 1983, petitioner purchased a house in Clifton, which was another neighborhood near downtown Cincinnati. Petitioner purchased the house, which needed work, with the hope of fixing it up and selling it for a profit. Petitioner never rented the house out. Instead, he moved into it in November 1983, after making the necessary repairs. Petitioner continued to live there until August 1, 1986. In 1984, petitioner sold his Midland, Michigan, house to Jeff *676 Blanchard. During 1982, petitioner made 5 trips to Midland, Michigan, from New Richmond, Ohio, an 8-hour drive. When he was in Midland, petitioner talked with Bechtel employees about potential employment at the plant. While in Midland, petitioner also saw his girlfriend, who lived near there. Petitioner also skied during one of the trips. Furthermore, petitioner often stopped during his trips to see his parents in Rochester, Michigan, which is on the way from New Richmond to Midland. For the year at issue, petitioner's driver's license reflected his parents' address. Petitioner also used his parents' address as his return address for correspondence while he was away from Midland. On his 1983 Federal income tax return, petitioner deducted temporary living expenses of $ 13,230 (less employer reimbursements) consisting of the following: Apartment rental
$ 3,925
Furniture rental
953
Utilities
664
Telephone
864
Laundry
422
Food
6,339
Insurance
63
Respondent disallowed this deduction in its entirety. Petitioner also deducted $ 2,754 for the expense of local transportation, which respondent also disallowed in its entirety. In addition, petitioner *677 reported rental income of $ 3,000, and claimed deduction for expenses of $ 7,509 for a claimed loss of $ 4,509 from his Midland house. Petitioner's claimed expenses consisted of the following: Insurance
$    78
Interest
4,200
Repairs
400
Taxes
609
Depreciation
2,222
Petitioner based his claimed deductions on the Midland house being 100 percent rental property. In his notice of deficiency, respondent disallowed five-sevenths of petitioner's claimed deductions. Respondent, however, allowed petitioner additional itemized deductions for the disallowed interest and real estate taxes. OPINION The first issue before us is whether petitioner is entitled to deduct his claimed away from home expenses. Respondent concedes that we should allow petitioner all of his claimed expense deductions for his Midland house if we hold that petitioner is not entitled to his claimed away from home expenses. Away from Home Expenses
Section 162(a) generally allows for deduction of all the ordinary and necessary expenses paid or incurred in carrying on any trade or business. Deductible ordinary business expenses include travel expenses incurred while away from home *678 in the pursuit of a trade or business. Sec. 162(a)(2). However, section 262 generally disallows expenses for personal, living, or family expenses. Furthermore, transportation expenses ordinarily incurred between one's residence and one's principal place of business, i.e., commuting expenses, are nondeductible personal expenses under section 262. ; . Generally, a taxpayer's home for purposes of section 162(a) is the area or vicinity of his principal place of employment. . An exception to this general rule exists, however, where a taxpayer's principal place of business is temporary rather than indefinite. . In that situation, the taxpayer's personal residence may be his "tax home." Petitioner argues that he left Midland with the intent of returning in 6 months with a higher earning potential as a contract employee. Petitioner therefore asserts that Midland, as his residence, remained his tax home while he engaged in a series of temporary *679 jobs. Respondent, on the other hand, contends that Midland was not petitioner's residence during 1982, and that petitioner's employment at the Zimmer Plant in Moscow, Ohio, for the year at issue was indefinite rather than temporary. Therefore, respondent argues, petitioner's claimed deduction should not be allowed because he was not away from his tax home. Respondent's determinations are presumed correct. Accordingly, petitioner bears the burden of proof. ; Rule 142(a). For the reasons stated below, we agree with respondent that petitioner's employment during 1982 was indefinite rather than temporary. Because this conclusion is dispositive of this issue, we shall focus our discussion on that point rather than on whether petitioner retained his residence in Midland. Employment is indefinite if its termination cannot be foreseen within a fixed or reasonably short period of time. , affd. per curiam . The temporary-indefinite test is a factual question, and "employment which was temporary may become indefinite if it *680 extends beyond the short term. Also, employment which merely lacks permanence is indefinite unless termination is foreseeable within a short period of time." ; see also ; . Petitioner argues that his job at the Zimmer Plant was his third in a series of temporary jobs he held from the time he left Bechtel in June 1981 until November 1983. In support of his argument, petitioner contends that although he remained employed at the Zimmer Plant for the entire year 1982 it was within the same temporary position, which he understood was to last only 3 to 6 months. Respondent asserts that petitioner's conduct establishes that his employment at the Zimmer Plant in 1982 was indefinite rather than temporary. Moreover, respondent argues that petitioner was employed at the Zimmer Plant for 2 years and would have stayed longer if the plant had not been shut down. Upon consideration of the record in this case, we hold that petitioner has failed to show that his employment at the Zimmer Plant *681 in 1982 was temporary rather than indefinite. Regardless of petitioner's intent when he left Midland in 1981, the facts simply do not show that termination of his employment could have been foreseen within a fixed or reasonably short time from when he left. Petitioner has merely shown that his job at the Zimmer Plant was not permanent. The lack of permanence of the job, however, does not by itself make it temporary. , affg. per curiam a Memorandum Opinion of this Court. Notwithstanding his testimony about intending to return to Midland within 6 months of his leaving Bechtel, petitioner embarked on a series of jobs that led to his eventually settling in Cincinnati. Petitioner's attempts to return to Bechtel were casual at best. A significant portion of petitioner's trips was devoted to personal activities -- visiting his girlfriend, skiing, and visiting his parents. Moreover, petitioner became entrenched in the Cincinnati area in 1982. After living in New Richmond for 5 months, petitioner entered into a 1-year lease in April 1982 for his Mt. Adams apartment. Although the lease has a termination clause, petitioner *682 was still required to pay 6 months rent. Finally, we note that petitioner was actually employed at the Zimmer Plant for 2 years. As respondent suggests, petitioner's conduct is simply inconsistent with his being able to foresee termination of his employment within a reasonably short time. Accordingly, we hold for respondent on this issue. Midland Rental Property
Respondent concedes that we should allow petitioner all of his disallowed claimed expenses for his Midland house if we disallow petitioner's claimed away from home expenses. Therefore, petitioner shall be allowed all of his claimed expenses for his Midland house. In light of the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩